UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**DONALD ZADECK SUCCESSION, ET AL.**          **CASE NO. 5:21-CV-00323**

**VERSUS**                                    **MAGISTRATE JUDGE KAYLA D. MCCLUSKY**

**CRYSTAL JEAN VANDIVER TREME, ET AL.**

## MEMORANDUM RULING

Before the undersigned[1] are two motions for summary judgment filed by Plaintiffs the Succession of Donald Zadeck ("Zadeck"), Zadeck Interests, LLC ("Zadeck Interests"), and the Zadeck Energy Group, Inc. ("Zadeck Energy") (collectively, "Plaintiffs"). [docs. #33, 34]. Defendants Crystal Jean Vandiver Treme ("Treme") and Rebecca Lynn Vandiver ("Rebecca Vandiver") (collectively, "Defendants") oppose both motions. [docs. #41, 42].

For the reasons assigned below, Plaintiffs' motion for summary judgment on prescription is granted in part and denied in part. The motion is granted to the extent that Plaintiffs contend that Defendants' claims are prescribed. The motion is denied as to costs. Plaintiffs' motion for summary judgment on conveyance is denied as moot. As the Court did not reach the substantive merits of the motion for summary judgment on conveyance, Defendants' motion to strike is also denied as moot.

---

[1] With the consent of all parties, the District Court referred the above-captioned case to the undersigned magistrate judge to conduct all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c).

## I. FACTUAL BACKGROUND

This action arises out a dispute related to nine individual mineral leases[2] (together, the "Mineral Leases") in the Belle Bower Field in DeSoto Parish, Louisiana. [doc. #41, p. 4]. In 1979, Donald Zadeck ("Zadeck") personally owned a working interest in the Mineral Leases—a 100% working interest in the Mineral Leases from the base of the Paluxy formation to the surface and a 50% working interest in the Mineral Leases below the Paluxy formation. [doc. #45-2 ¶ 1].

In 1980, Zadeck completed the Harrison Brown No. 1 well in the Upper Hosston formation, located below the Paluxy formation on a unit encompassing four of the nine Mineral Leases (the "Upper Hosston Unit"). *Id.*; [doc. #41, p. 5]. By 1990, Zadeck owned a 41.625% working interest in the Mineral Leases below the Paluxy formation, having conveyed an 8.375% working interest to parties not involved in the instant suit. [doc. #34-1, p. 2]. At that time, Zadeck Energy acquired a 50% working interest in the Mineral Leases below the Paluxy formation and took over as operator of Harrison Brown No. 1 well. *Id.* Accordingly, in 1990, working interests in the Mineral Leases below the Paluxy formation belonged 50% to Zadeck Energy, 41.625% to Zadeck personally, and 8.375% to other parties not involved in this action.

By 1992, production from Harrison Brown no. 1 well on the Upper Hosston Unit had ceased. [doc. #34-1, p. 2]. In May 1993, Zadeck Energy recompleted the Harrison Brown no. 1 well in the Pettet formation, located below the Paluxy formation on a recompleted unit encompassing two of the nine Mineral Leases. *Id.*; [doc. #41, p. 6].

---

[2] A mineral lease is a contract which gives the lessee the right to explore for and produce minerals. LA. R.S. § 31:114; *see Davis v. Meagher Oil & Gas Props., Inc.*, 8-CV-1638, 2010 WL 819403, at *2 (W.D. La. Mar. 4, 2010).

Around May 1993, Defendants claim that their father, Douglas Vandiver ("Vandiver"), operations manager for Zadeck Energy, was conveyed a five-percent working interest in the Mineral Leases as compensation for the recompletion of the Harrison Brown No. 1 well. [doc. #41, p. 9]. Plaintiffs, on the other hand, claim that Vandiver had a five-percent working interest in Harrison Brown No. 1 well itself—not the Mineral Leases. [doc. #34-1, p. 6-7].

Defendants concede that Vandiver never recorded his alleged working interest in the Mineral Leases, and there is no writing evidencing a conveyance. [doc. #41, p. 10; doc. #34, p. 12]. Zadeck Energy, however, has accounting records crediting Vandiver with a five-percent working interest in Harrison Brown no. 1 well. *Id.* Vandiver received payments associated with that working interest and made payments to Zadeck Energy for his proportionate share of the costs for Harrison Brown no 1. well. [doc. #41, p. 10].[3] When Zadeck Energy later transferred all its well operations to Titan Land and Mineral, LLC, its affiliate, Louisiana Energy Consultants, Inc., ("LECI"), continued to recognize Vandiver's five-percent working interest in the Harrison Brown no. 1 well. [doc. #41, p. 12]. Vandiver and his heirs continued to pay proportionate shares of the costs and continued to receive revenue from LECI based on their proportionate share.[4] *Id.*

---

[3] Neither Plaintiffs nor Defendants have any accounting records for years before 2004. [doc. #41, p. 6; doc. #34-1, p. 6]. Zadeck Energy kept division of interest ("DOI") files for each of the wells that it operated that would show the various ownership interests in the wells. [doc. #41, p. 9]. Defendants point out that the DOI for the Harrison Brown no. 1 well is the only DOI that Zadeck Energy cannot locate. *Id.* Records beginning in 2004 reflect that Vandiver and, later, Defendants were paid a share of revenue associated with a five-percent interest in Harrison Brown no. 1 well from 2004 to 2012, when production from Harrison Brown no. 1 well ceased. [doc. #34-1, p. 7].

[4] Vandiver and his heirs received payments for revenue and bills for costs associated with Harrison Brown no. 1 well until late 2012, when it was determined the well was probably no longer capable of commercial production. [doc. #34-1, p. 10]. In 2011 and 2012, Zadeck Energy attempted to purchase the Vandivers' interest in Harrison Brown no. 1 well. [doc. #41, p. 12-13]. Paul Jarratt, a former employee of Zadeck Energy, testified in a deposition that Zadeck's attempt to purchase Vandiver's interest in the well, which was unprofitable, suggests Zadeck recognized that Vandiver

3

In 1994, Zadeck assigned his personal rights, title, and working interest in the Mineral Leases to T.M. Hopkins, Inc.[5] [doc. #34-1, p. 9]. In 2007, Zadeck Energy conveyed its 50% working interest in the Mineral Leases to Comstock Oil & Gas Louisiana, LLC ("Comstock"). *Id.* Zadeck Energy reserved a one-eighth overriding royalty interest[6] and an option to exchange that overriding royalty interest for a working interest at the payout.[7] [doc. #41-2, p. 47-48, 213]. Zadeck Energy declined that option in 2018, thereby terminating it. *Id.* at 213. After the 1994 conveyance to T.M. Hopkins and the 2007 conveyance to Comstock, neither Zadeck nor Zadeck Energy owned a working interest in the Mineral Leases. [doc. #34-1, p. 9].

Defendants claim that Zadeck Energy included Vandiver's alleged five-percent working interest in the Mineral Leases in its conveyance to Comstock. [doc. #41, p. 13]. After the conveyance, Comstock drilled several wells on the land covered by the Mineral Leases and paid Zadeck Energy and its successor, Zadeck Interests, the revenue attributable to the overriding royalty interests. [doc. 34-1, p. 10]. Vandiver did not receive any compensation from the conveyance, nor did he receive any overriding royalty interest payments. *Id.* This is the source of the instant dispute. *Id.*

---

actually had a five-percent working interest in the Mineral Leases and not in Harrison Brown well no. 1. *Id.* Harrison Brown well no. 1 was plugged and abandoned on October 1, 2019. [doc. #34-1, p. 10].

[5] Zadeck, in his personal capacity, retained a "wellbore interest," which is an interest only in the well itself and carries no ownership of mineral leases or right to explore for oil and gas.

[6] An overriding royalty interest is an interest in the revenue from the sale of well production. *Encana Oil & Gas (USA), Inc. v. Brammer Eng'g, Inc.*, 51,045, p. 7 (La. App. 2 Cir. 11/16/16); 209 So.3d 995, 1000. An overriding royalty interest holder does not bear any of the costs to drill or produce the well. *Id.*

[7] The "payout" would occur once Comstock had recovered all costs of acquisition, drilling, development, and operation of the wells.

In 2009, Vandiver sent an email to his attorney, Marshall Jones, asking him about a potential claim against Zadeck for his purported five-percent working interest in the Mineral Leases. [doc. #s 33-1, p. 4, 33-9]. Treme, one of Vandiver's daughters, testified that Vandiver told her about this exchange in 2009. [doc. #33-8, pp. 5-7, 9]. However, no action was filed by Defendants at that time.

Vandiver died in December 2011. [doc. #45-2 ¶ 3].

Instead, eight and one-half years later, on June 4, 2020, Defendants, through counsel, sent Plaintiffs a letter claiming that, in 1993, Zadeck Energy conveyed a five-percent working interest in the Mineral Leases to Vandiver. [doc. #33-1, p. 12]. Shortly after, on July 15, 2020, Zadeck died. *Id.*

On January 26, 2021, Defendants filed a notice of proof of claim in Zadeck's succession, asserting that they are entitled to (1) a portion of the consideration Zadeck received from the 2007 assignments to Comstock; (2) a portion of the overriding royalty payments Zadeck received from Comstock; and (3) a formal assignment by Zadeck of the Mineral Leases.

On February 5, 2021, Plaintiffs filed suit in this Court, seeking a judgment at Defendants' cost declaring that Defendants are not entitled to an assignment of any interest in the Mineral Leases, nor any profits or accounting associated with them. [doc. #8, p. 8].

On July 7, 2021, the parties submitted their Rule 26(f) report and consented to trial by magistrate judge [doc. #5]. Chief Judge Hicks subsequently referred the case to the undersigned. [doc. #18].

On July 13, 2021, Defendants filed their answer and a counterclaim seeking a declaratory judgment (1) that Zadeck Energy conveyed and transferred to Vandiver a five-percent working

interest in the Mineral Leases; (2) recognizing that Defendants own a five-percent working interest in the Mineral Leases; (3) ordering an accounting of the amount Zadeck Energy received from Comstock for the Mineral Leases; and (4) awarding Defendants damages equal to the amount Zadeck Energy received from Comstock for the Mineral Leases. [doc. #17, p. 12].

On January 3, 2022, Plaintiffs filed the instant motions for summary judgment on the issue of prescription and on the Defendants' conveyance claim. [docs. #33, 34].

On January 12, 2022, Defendants filed an unopposed motion to continue trial, which was previously scheduled for March 7, 2022. [doc. #39]. On January 14, 2022, the undersigned granted Defendants' motion, continuing trial without date until the disposition of the pending motions for summary judgment. [doc. #40].

On February 4, 2022, Defendants filed their opposition to the instant motions. [doc. #41, 42].

On February 18, 2022, Plaintiffs filed their reply briefs. [docs. #46, 47]. Accordingly, this matter is ripe.

## II.   APPLICABLE LAW

*A. Summary Judgment Standard*

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

6

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002) (quoting FED. R. CIV. P. 56(c)) (internal quotations omitted). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[8]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is

---

[8] However, Rule 56 does not require the Court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citation omitted).

7

appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

   B. *Controlling Law*

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and must apply Louisiana substantive law just as a Louisiana court would. *Musser Davis Land Co. v. Union Pac. Res.*, 201 F.3d 561, 563 (5th Cir. 2000) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938)). To determine a question of state law, this Court first looks to the decisions of the Louisiana Supreme Court. If the State's highest court has not yet decided the issue, this Court must determine as best it can, what the Louisiana Supreme Court would decide. *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992). State appellate courts' decisions may guide this Court in determining state law. *Hulin v. Fibreboard Corp.*, 178 F.3d 316, 328 (5th Cir. 1999).

### III. ANALYSIS

   A. *Plaintiffs' Motion for Summary Judgment on Prescription*

In the instant motion, Plaintiffs argue that any claim Defendants may have had to the Mineral Leases or profits from the conveyance of the Mineral Leases has prescribed. Plaintiffs argue that the claims Defendants assert in their counterclaim are personal actions subject to a ten-year prescriptive period. Because Vandiver and Treme knew about all potential claims in 2009, Plaintiffs argue that those claims are now time-barred.

In their opposition, Defendants contend that their claims are real actions and, as such, are imprescribable. Defendants argue that they brought the instant action to determine the parties' rights to the Mineral Leases, and actions to determine a party's ownership rights are real actions

under Louisiana law. Defendants also argue that, although Plaintiffs transferred their rights in the Mineral Leases to a third party, the transfer was merely a sublease and "[i]f Comstock determined that it no longer wished to drill on the Harrison Brown Leases, it could release [them] and the working interest rights would revert back to [Plaintiffs]." [doc. #41, p. 15]. Finally, Defendants insist that Plaintiffs' prescription argument fails because Defendants' counterclaim seeks the exact same thing as Plaintiffs' declaratory judgment—that is, a determination of the parties' rights to the Mineral Leases.

In reply, Plaintiffs argue that, although an action to determine a party's ownership is typically a real action, such a real action abates when the property is no longer in the defendant's possession. [doc. #46, p. 2]. In this scenario, Plaintiffs argue that the only remaining action is a potential personal action for unjust enrichment or damages against the former possessor. *Id.* Plaintiffs also argue that the action has in fact abated because the conveyance to Comstock was not a sublease, nor do Plaintiffs have any right or option to regain ownership of the Mineral Leases. *Id.* at 4. Finally, Defendants clarify that they do not seek a judgment of the parties' rights; rather, they seek only a determination that Defendants are not entitled to the Mineral Leases or any profits associated with them because Defendants' potential claims have since prescribed. [doc. #46, p. 2].

The determinative question before the Court is whether Defendants' claims constitute a personal or real action. "The [Louisiana] Supreme Court has declared that 'the term real right under the civil law is synonymous with propriety interest, both of which refer to a species of ownership. Ownership defines the relation of man to things and may, therefore, be declared against the world.'" *CLK Co., v. LLC v. CXY Energy, Inc.*, 98-0802, p. 1104 (La. App. 4 Cir. 9/16/98); 719 So.2d 1098, 1104 (quoting A.N. Yiannopoulos, *Louisiana Civil Law Treatise-Property* § 201,

9

367 (1991)). On the other hand, "[a] personal right may be defined as the legal power that a person (obligee) has to demand from another person (obligor) a performance consisting of giving, doing, or not doing a thing. The Louisiana Supreme Court has declared that 'a personal right . . . defines man's relationship to man and refers to an obligation one owes to another which may be declared only against the obligor." *Id.* (emphasis omitted). Importantly, a real right is imprescribable while a personal right is subject to a ten-year prescriptive period. *Boone v. Conoco Phillips Co.*, 2013-1196, p. 21 (La. App. 3 Cir. 5/7/14); 139 So.3d 1047, 1060-61; *Songbyrd, Inc. v. Bearsville Recs., Inc.*, 104 F.3d 773, 779 (5th Cir. 1997); LA. CIV. CODE art. 3499 ("a personal action is subject to a liberative prescription of ten years.").

"Actions seeking recognition of ownership or enforcement of the rights thereof, whether in movable or immovable property, are not personal actions; they are 'real actions.'" *Songbyrd*, 104 F.3d at 777 (quoting A.N. Yiannopoulos, 2 *Louisiana Civil Law Treatise* § 241, 476 (1991)). These actions, referred to as "revendicatory actions," allow "[t]he owner of a thing . . . to recover it from anyone who possesses or detains it without right and to obtain judgment recognizing his ownership and ordering delivery of the thing to him." LA. CIV. CODE art. 526. However, because this right is predicated on the defendant maintaining possession of the property, a "revendicatory action abates when the [property] is no longer in the defendant's possession." *Boykins v. Boykins*, 2007-0542, p. 5 (La. App. 4 Cir. 4/30/08); 984 So.2d 181, 185. When a revendicatory action abates, "a plaintiff may have a *personal* action for damages or unjust enrichment against the former possessor . . . ." *Id.* (emphasis added); *see also Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 98-0343, p. 4 (La. 12/1/98); 721 So.2d 853, 856. Thus, the nature of a cause of action may change from a real action to a personal action, depending on the relationship of the parties to the property. *Aertker v. Placid Holding Co.*, No. 07-473, 2012 WL 4472002 (M.D. La. Sept. 12, 2012) (holding

that a revendicatory action related to immovable property abated because defendants no longer owned an interest in the property, leaving plaintiff with a personal action for damages).

In this case, Defendants seek a judgment determining that Defendants are entitled to a five-percent working interest in the Mineral Leases and awarding Defendants such an interest, as well as damages. [doc. #9 ¶ 18]. At first glance, Defendants' claim appears to be a real action because they are seeking recognition of their ownership in the Mineral Leases. Certainly, such actions are categorized as real actions under Louisiana law. *See Songbyrd*, 104 F.3d at 777. Yet, Defendants' action is complicated by the fact that Plaintiffs no longer own the property of which Defendants seek a judgment of ownership. It is undisputed that, even if Defendants had owned five-percent of the Mineral Leases at some point, this interest was conveyed to, and recorded by, Comstock in 2007. [doc. #33-5]. Due to the conveyance and recordation, Defendants cannot seek a property interest in the Mineral Leases that are now owned by Comstock. Thus, Defendants do not have a real action because they can no longer claim a right against the world.[9] *Boykins*, 984 So.2d at 185. What Defendants have is a personal action against Plaintiffs for any conduct that may have deprived them of the property to which they were purportedly entitled before the conveyance to Comstock. *See id.*; *Aertker*, 2012 WL 4472002 at *5. However, because Defendants knew of this potential action in 2009 (at the latest), any personal action Defendants may have once had has been

---

[9] Although Plaintiffs maintained a one-eighth overriding royalty interest in the Mineral Leases, an overriding royalty interest is distinct from a working interest. "An overriding royalty is an interest severed out of the working interest or lessee's share of the oil, free of the expenses of development, operation, and production." *Encana*, 209 So.3d at 1000. Importantly, an overriding royalty interest is a nonpossessory interest. *Standard Oil Co. v. Marshall*, 265 F.2d 46, 57 (5th Cir. 1959). On the other hand, a working interest provides the right to enter the land to explore, drill, and produce and sell oil and gas. It is also burdened with the cost of development and operation of the well. *Gloria's Ranch, LLC v. Tauren Expl., Inc.*, 252 So.3d 431, 440-41 (La. 2018).

11

extinguished by the ten-year prescriptive period to which personal actions are subject. [doc. #s 33-8, pp. 35-36, 113-121, 33-9].

Although Defendants concede that the Mineral Leases were conveyed to Comstock, they contend that Plaintiffs retain a working interest in the Mineral Leases, and, thus, that the real action did not abate. Defendants argue that "[i]f Comstock determined that it no longer wished to drill on the [Mineral Leases], it could release [them] and the working interest rights would revert back to [Defendants]," reserving Plaintiffs' ownership rights. [doc. #41, p. 15]. In support for their assertion, Defendants cite to *Smith v. Sun Oil Co.*, 116 So. 379 (La. 1928), a Louisiana Supreme Court case in which "a conveyance of a mineral lease subject to a reserved overriding royalty and a right of reversion . . . was held to be a sublease." However, Defendants do not cite to any language in the agreement with Comstock that might suggest a right of reversion, nor has the Court found any such language.[10] Thus, the Court finds that *Sun Oil* – the only support Defendants offer for the proposition that Plaintiffs maintain a present or future working interest in the Mineral Leases – is inapplicable.

Finally, the undersigned is unpersuaded by Defendants' argument that, if the Court finds that Defendants' claims have prescribed, it must also find that Plaintiffs' claims are barred by prescription. Defendants seek a judgment recognizing their rights to the Mineral Leases and compensation for those rights. Plaintiffs merely seek a judgment finding that Defendants are not entitled to those rights because they no longer exist. While Defendants' position would require

---

[10] The undersigned notes that the conveyances did include an option for Zadeck Energy to exchange its overriding royalty interest for a working interest at the payout (i.e., once Comstock had recovered all costs of acquisition, drilling, development, and operation of the wells). [doc. #41-2, p. 47]. However, even if the Court were to find that the option operated as a right of reversion in this case, Zadeck Energy declined the option in 2018, thereby terminating it. *Id.* at 213.

the Court to rule on the merits of the case (now barred by prescription), Plaintiffs' position does not. In finding that Plaintiffs are entitled to summary judgment, the Court is merely finding that Plaintiffs do not owe Defendants anything because Defendants' potential rights have prescribed.

### B. *Plaintiffs' Motion for Summary Judgment on Conveyance*

In their motion for summary judgment on conveyance, Plaintiffs argue that Zadeck did not convey, either orally or in writing, or deliver to Vandiver, any interest in the Mineral Leases. Plaintiffs contend that neither they nor Defendants have any evidence that there was ever a writing conveying an interest in the Mineral Leases to Vandiver or Defendants. And, even if there was an oral conveyance, Plaintiffs argue that Vandiver never received delivery of any alleged conveyance and never recognized an alleged transfer under oath.

In their opposition, Defendants contend that there was a valid oral transfer of the Mineral Rights by Zadeck to Vandiver. Vandiver, Defendants argue, received physical possession of a five-percent working interest in the Mineral Leases and Julie Zadeck, on behalf of her father's estate, testified under oath that there was an agreement with Vandiver related to the subject property. Finally, Defendants argue that by bringing this petitory action, Plaintiffs admit that Defendants are in possession of a five-percent working interest.

In reply, Plaintiffs argue that Defendants have not met their burden by presenting evidence of a written conveyance of the Mineral Leases, testimony that such a document existed, testimony by the alleged transferor under oath recognizing transfer of the leases, or evidence that the Mineral Leases were delivered to Defendants. Plaintiffs also argue that parole evidence is inadmissible to prove a conveyance. Finally, Plaintiffs contend that because this is not a petitory action, they have not admitted delivery of the Mineral Lease.

This Court need not reach the issue of whether there was a conveyance of the Mineral Leases. Because the Court finds that Defendants have a personal action against Plaintiffs, and not a real action, and that the personal action has prescribed, the issue of whether there was a valid conveyance is moot. If there was no conveyance, then the Plaintiffs do not owe the Defendants any revenue, assignment of interest, or accounting related to the Mineral Leases or conveyances. And, even if there was a conveyance, any action that Defendants have related to the conveyance is a personal action that has prescribed under the ten-year prescriptive period. Accordingly, the Court is barred from considering the substantive merits of the personal action.

### C. Plaintiffs' Costs

In their amended complaint, Plaintiffs request that judgment be rendered in favor of Plaintiffs against Defendants at their cost. [doc. #6, p. 8].

Federal Rule of Civil Procedure 54(d) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." FED. R. CIV. P. 54(d). While the rule grants the court discretion to deny costs to a prevailing party, "the general discretion conferred by Rule 54(d)(1) has been circumscribed by the judicially-created condition that a court 'may neither deny nor reduce a prevailing party's request for cost without first articulating some good reason for doing so.'" Pacheco v. Mineta, 448 F.3d 783, 794 (5th Cir. 2006) (quoting Schwarz v. Folloder, 767 F.2d 125, 131 (5th Cir. 1985)).

In *Pacheco*, the court articulated several factors to justify withholding costs from a prevailing party, including the losing party's good faith in bringing the action, close and difficult legal issues presented, the losing party's limited financial resources, misconduct by the prevailing party, and substantial benefit conferred on the public. *Id.* at 794-95. While the losing party's good

faith in bringing the action is not enough by itself to justify denying costs to the prevailing party, it can, in conjunction with consideration of the other factors, weigh in favor of denying costs. *Id.* at 793-95.

Applying the *Pacheco* factors, the Court finds that costs should not be awarded to Plaintiffs. This case presented close and difficult legal issues. Further, the Court believes that Defendants' claims were brought in good faith.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment on prescription is **GRANTED in PART** and **DENIED in PART.** To the extent that Plaintiffs seek a declaratory judgment that Plaintiffs do not owe Defendants (1) an assignment of any interest in the Mineral Leases; (2) any revenue received by Plaintiffs attributable to the Mineral Leases; or (3) an accounting of any revenue received from the conveyances, Plaintiffs' motion is **GRANTED** as Defendants' claims are prescribed. To the extent that Plaintiffs seek a judgment requiring Defendants to pay Plaintiffs' costs associated with this suit, Plaintiffs' motion is **DENIED**.

Plaintiffs' motion for summary judgment on conveyance is **DENIED** as **MOOT.** As the Court did not reach the substantive merits of the motion for summary judgment on conveyance, Defendants' motion to strike is also **DENIED** as **MOOT**.

Defendants' counterclaim is **DISMISSED WITH PREJUDICE**.

THUS DONE in Chambers on this 15th day of September, 2022.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE